UNITED STATES of America, For the Use of Charles H. THAYER, Jr., and Joseph J. Wallace, partners trading as Thayer and Wallace, Plaintiffs,

v.

METRO CONSTRUCTION CORPORA-TION, formerly Brown Contracting Corporation et al., Defendants.

Civ. A. No. 570–70–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Aug. 23, 1971.

A. J. Kalfus, Norfolk, Va., for plaintiffs.

Vincent J. Mastracco, Jr., Norfolk, Va., for defendants.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

This is an action under the Miller Act, 40 U.S.C. § 270a et seq., in which the plaintiffs were awarded contract, evidenced by a purchase order issued by Old Dominion Repair Corporation[1] on June 11, 1968, for "Engineering Service not to exceed $2500.00" in connection with the construction of a water tower at the Northwestern Radio Station in Chesapeake, Virginia. Brown Contracting Corporation, the prime contractor, had contracted with Old Dominion as a subcontractor. Brown, now Metro Construction Corporation, had executed a performance and payment bond with three bonding companies who are likewise defendants herein.

While the original purchase order called for services "not to exceed $2500.-

---

1. Old Dominion Repair Corporation was adjudicated a bankrupt on August 4, 1969. The present action was not filed until August 11, 1970, and service upon the bankrupt corporation was not according to law.

00," it is abundantly clear that the use plaintiffs performed services worthy of this amount. Additional services aggregating $316.22 are not in dispute. There remains the sum of $1316.22 due and owing by Old Dominion to the use plaintiffs.

The work of the use plaintiffs was substantially completed in the fall of 1968. Indeed, according to Thayer, neither he nor any of his employees visited the job site between the time of the execution of the contract on June 11, 1968 until January 27, 1970. The nature of Thayer's work was drafting plans for the water tower. He concedes that he was not a supervising engineer on the job.

Thayer's attorney contacted Old Dominion in July, 1969—just prior to bankruptcy—and made final demand for payment. Thayer concedes that at no time did he contact or notify the general contractor until April 23, 1970, on which date he sent a carefully worded notice as required by the Miller Act.

During the first week in January, 1970—long after the rights under the Miller Act had expired—Thayer's attorney, Mr. Cooper, telephoned Crane, the president of Metro, inquiring as to the payment of the balance due by Old Dominion. Crane advised that the time for filing a claim had long since expired.

On January 27, 1970, Thayer made his first visit to the job site.[2] Thereafter, Thayer forwarded a copy of his inspection report to all interested parties. Within ninety days from the date of this inspection, Thayer sent his formal notice under the Miller Act.

■ The fundamental question is whether the engineering services as contemplated by the contract between Old Dominion and the use plaintiff obligated Thayer to perform a final inspection. We answer this issue in the negative.

Manifestly, Thayer was not a consulting engineer charged with the responsibility of inspecting the job in progressive stages. His sole function was to prepare the design, drawings and specifications for the water tower. It is, of course, fundamental that the nature of the services required in some contracts would include a final inspection by an engineer, but this is not the present case.

In C. W. Regan, Inc. v. Parsons, Brinckerhoff, Quade and Douglas, 411 F. 2d 1379 (4 Cir. 1969), Parsons was a consulting engineer under direct contract with the Elizabeth River Tunnel Commission, the owner of the tunnel being constructed between Norfolk and Portsmouth. A bulkhead, designed by Parsons, collapsed causing injury to workmen on the job and damage to the work being performed by Regan. The court there held that, in order to sustain Regan's right of recovery against Parsons "we must find in the contracts not only a clear obligation on the part of the defendants [Parsons] to perform in the area in question, but we must also find an intention that for breach of such obligation the defendants [Parsons] are to be liable to the workmen on the job."

In the instant case Thayer completed his calculations, working drawings and foundation plans on or about September 20, 1968, and the Government approved of same on that date. Save and except an occasional telephone call, Thayer had nothing further to do other than collect his bill for services rendered. During the fall of 1968 and the early part of 1969, Old Dominion paid on account, leaving due the sum of $1316.22.

It is argued that Thayer performed his services under a *duty* to see to it that the owner obtains a structure in accordance with the plans and specifications. Under certain contracts such a duty would be clear. But if we follow this reasoning through to a conclusion, such a holding would require architects, charged only with the duty of drawing plans and specifications, to serve as supervising architects. Moreover, in

---

2. We do not suggest that Mr. Thayer failed to visit the job site in May or June, 1968, in preparation for the plans to be drawn.

Government contracts such as here involved, the final inspection is made by the Government which presumably has competent engineers performing this service.

There is evidence that inspections are normal in many situations. That fact cannot be disputed, but again it is resolved by the contract between the parties. Where inspections are deemed normal, it is also the custom to make progressive inspections of the project. Such was not done in this case. Authorities such as Day & Zimmerman, Inc. v. Blocked Iron Corp. of America, 200 F. Supp. 117 (E.D.Pa.1960), and H.M.R. Construction Co. v. Wolco of Houston, Inc., Tex.Civ.App., 422 S.W.2d 214 (1967), are inapposite.

There was clearly no obligation upon Thayer to see that the contract was completed. He does not contend that either the Government or Metro ever requested him to perform the voluntary inspection. While General Insurance Company of America v. United States, 406 F.2d 442, rehearing den. 409 F.2d 1326 (5 Cir. 1969), goes far in supporting defendants' view that a final inspection will not extend the time merely to correct defects after the completion of the work, we need not rest this decision on whether, in fact, the work had been completed.

■ We are not unmindful of the fact that the Miller Act is highly remedial in character and is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those who furnish labor or materials for public works. United States for Use and Benefit of Westinghouse Elec. Supply Co. v. Endebrock-White Company, 275 F.2d 57 (4 Cir. 1960). We find, however, that Thayer's sole purpose in making the so-called final inspection on January 27, 1970, was hopefully to come within the Miller Act in an effort to collect a debt which had been wiped out by the bankruptcy of Old Dominion about five months prior thereto.

Counsel for defendants will prepare and present a judgment order in accordance with this memorandum, after first obtaining the endorsement of plaintiff's counsel.